UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:20CR172 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| TRAYNAL L. SHERRELL, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

This matter comes before the Court on Defendant Traynal Sherrell's Motion to Suppress evidence seized from a FedEx package. (Doc. 17). Because investigators had reasonable suspicion to detain the package and probable cause to search the package, the Court **DENIES** Defendant's Motion to Suppress.

### I. BACKGROUND FACTS[1]

On the morning of February 21, 2019, Detective Todd Gillilan of the Canton Police Department received a message from a Confidential Source ("CS") about a suspicious FedEx package located in Canton, Ohio. The CS identified a specific parcel and provided Gillilan with a tracking number to locate the package. Gillilan then contacted FedEx employees and had the package removed for further investigation.

---

[1] The following facts are taken from Detective Gillilan's Affidavit for Search Warrant (the "Affidavit"), which both parties agree controls the factual narrative for this matter.

Gillilan arrived at the FedEx facility and continued his investigation. He noted the package's weight (nine pounds), the shipping label, shipping method and payment method. He learned that Defendant's name and address in California were listed as the sender. He also learned that the recipient of the package was a "Timaeus Foster" in Canton, Ohio.

Gillilan next had the information for both the sender and recipient run through law enforcement databases. The information pertaining to Defendant appeared accurate. For the recipient however, the name "Timaeus Foster" appeared fictitious, as it was different from the name associated with the address, "Timothy Foster."

Detective Gillilan also claims to have knowledge that Defendant was involved in drug trafficking in Canton, Ohio and California. Furthermore, Gillilan was aware of a connection between Defendant and Lavasia Williams, who received a FedEx mailing containing roughly one pound of marijuana earlier in February of 2019.

Based on the above information, along with his eighteen-plus year career in law enforcement, Gillilan decided to further investigate the package. He separated the parcel and placed it in a lineup for his partner, Canine Cash, to examine. Cash is certified by the State of Ohio as a Special Purpose Canine, trained to alert to the presence of narcotic odors. As Cash sniffed the lineup, Cash alerted at the suspected parcel. With Cash's positive alert, Detective Gillilan removed the package from the FedEx facility and sought a search warrant.

Gillilan swore to the above facts and applied for a search warrant in Stark County, Ohio. A Common Pleas Judge granted the Search Warrant. Authorities searched the package that same day. As a result of the search, officers uncovered two vacuum sealed bricks of suspected cocaine.

On March 4, 2020, a Federal Grand Jury indicted Defendant with one count of Distribution of a Controlled Substance, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). Defendant moved to suppress the evidence obtained by Detective Gillilan's investigation. (Doc. 17). The Government opposed (Doc. 19) and Defendant filed a Reply thereafter. (Doc. 23).

## II. LAW & ANALYSIS

### A. Standard of Review

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Here, the Court is confronted with two questions: 1) did Detective Gillilan have reasonable suspicion to separate the target package for further investigation? If so, 2) did probable cause exist for Detective Gillilan to search the target package? For the following reasons, the Court answers both questions in the affirmative.

### B. Reasonable Suspicion to Detain the Package

The crux of Defendant's argument is that Detective Gillilan did not have a reasonable suspicion to believe that the package contained narcotics. Accordingly, Gillilan should not have separated the package for further investigation. The Government disagrees and argues that the detective did have a reasonable suspicion to detain the package for further investigation.

The Court agrees with the Government. "[R]easonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." *United States v. Robinson*, 390 F.3d 853, 870 (6th Cir.

2004); *United States v. Alexander*, 540 F.3d 494, 500-01 (6th Cir. 2008). "Reasonable suspicion is a less demanding standard than probable cause…[and] can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990); *see also United States v. Keeling*, 783 Fed. App'x 517, 521 (6th Cir. Aug. 8, 2019) ("Reasonable suspicion requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard") (citations omitted). Reasonable suspicion is dependent on the totality of the circumstances – i.e., the whole picture – and officers must have a particularized and objective basis for suspecting criminal activity is afoot. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

Here, Detective Gillilan had a reasonable suspicion to believe narcotics trafficking was afoot based on: 1) a tip from the CS who provided a 'particularized' tracking number; 2) the suspicious details of the package, including the recipient's apparent fictitious name ("Timaeus"); 3) the sender's California address, a noted source state for narcotics; and 4) Detective Gillilan's eighteen-year law enforcement career and experience in narcotic's investigations, including a recent interdiction of narcotics shipped via FedEx.[2] These facts provide both a particular and objective reason to suspect that the package contained narcotics.

Defendant's arguments to the contrary do not convince the Court otherwise. Regarding the CS, Defendant takes issue with Detective Gillilan's lack of explanation concerning the CS's veracity or reliability. True, the Affidavit does not mention the source's reliability. But because

---

[2] The Court takes this fact from Gillilan's Affidavit, Paragraph 6. The Court stresses that it lends no credence to the alleged connection between Defendant and Lavasia Williams. Whatever that connection may be, it is not clearly stated in Paragraph 6 and difficult to ascertain from the face of the Affidavit. Accordingly, that fact – Defendant's connection with Williams – does not influence the Court's finding of reasonable suspicion. The same is true for the last line in Paragraph 5 – that "[l]aw enforcement has knowledge of [Defendant's] involvement in drug trafficking in Canton, Ohio and California." This paragraph is conclusory and supported by insufficient facts to justify its inclusion in the Court's reasonable suspicion analysis.

the source contacted Detective Gillilan directly on his cell phone at 6:44AM, this source is likely known to the Detective. This is important, as anonymous sources "demand more stringent scrutiny of their veracity, reliability and basis of knowledge than reports from confidential informants." *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003). Moreover, the Court is concerned with a reasonable suspicion analysis, and not one based on probable cause. Again, this is a significant difference. *See Adams v. Williams*, 407 U.S. 143, 147 (1972) (while an unverified tip may have been insufficient for a narcotics arrest or search warrant, the information may justify a stop if it carries enough indicia of reliability). And the CS's tip here contained sufficient indicia of reliability: i) a particular twelve-digit tracking number which, contrary to Defendant's argument, is not easily identifiable by a passerby; rather, it reflects an intimate association with the parcel; ii) a suspicious recipient name, discussed more below; and iii) the origination of the package from California, discussed more below. Detective Gillilan observed these additional facts, further corroborating the CS's tip, all the while enhancing the source's reliability.

     Defendant also attacks the apparent 'fictitious name' of Timaeus. According to Defendant, Timaeus is a perfectly normal name, despite it not being associated with the recipient-address. Later in his Reply, Defendant argues that Timaeus is the name of the resident's son. Despite these arguments, the Court's concern is with reasonable suspicion *at the time of the investigation*, not what information later comes to light. *United States v. Alexander* is illustrative in this regard. In *Alexander* – a case that concerned the detainment of a parcel predicated in part on the invalidity of an address – the Sixth Circuit found irrelevant the fact that the address may have been accurate. 540 F.3d at 501. Instead, the Sixth Circuit focused on the time of the investigation and found that the officer made a reasonable effort to verify the address,

ultimately receiving a report it was fake. *Id.* The same is true here. Detective Gillilan requested information from a law enforcement database that produced a result of inconsistency in names. In a time-sensitive investigation like this – indeed, the investigation from confidential tip to search of the package all took place within the same day – Gillilan acted in a reasonable manner. That fact can be reflected by Defendant's own briefing and investigation as it took Defendant two and a half weeks to definitively say Timaeus is the son of the registered resident. Thus, the Court is not persuaded by Defendant's attack on the fictitious name.

Finally, Defendant attacks the Government's argument concerning California as a 'source state' for narcotics. According to Defendant, this fact is too broad and overreaching to establish reasonable suspicion. Unfortunately for Defendant however, the caselaw is on the Government's side. While it may be a weak indicator, *see United States v. Urrieta*, 520 F.3d 569, 576-77 (6th Cir. 2008), a city or state's reputation as a source of narcotics may be used in a reasonable suspicion calculation, *see generally*, *United States v. Sokolow*, 490 U.S. 1 (1989). *See also United States v. Huerta*, 655 F.3d 806, 810 (8th Cir. 2011) (holding that California as a source state on mailing can be considered as a factor in support of reasonable suspicion). Accordingly, Defendant's argument about California as a source state is without merit.

With his various arguments, Defendant attempts to 'divide and conquer' each factual allegation on its own, stating each alone cannot establish reasonable suspicion. But the Supreme Court has previously rejected this tactic. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002). Just because one fact by itself may be susceptible to an innocent explanation, it does not justify giving that fact no weight in the 'totality of the circumstances' analysis. *Id.*; *Sokolow*, 490 U.S. at 9-10. Here, the totality of the circumstances, coupled with Detective Gillilan's experience as a

law enforcement officer and investigator of narcotics trafficking, established a reasonable suspicion to detain the package for further investigation.

C.     **Probable Cause to Search the Package**

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is said to exist when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (citations omitted).

In *Illinois v. Gates*, the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, **given all the circumstances set forth in the affidavit** before him [or her],…there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

462 U.S. 213, 238-39 (1983) (citations omitted) (emphasis added); *see also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

Thus, a probable cause finding "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. However, reviewing courts must ensure that the issuing magistrate or judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the

magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (quoting *Gates*, 462 U.S. at 239).

A reviewing court assesses probable cause by focusing only on the four corners of the affidavit. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998) (citing *Whitely v. Warden*, 401 U.S. 560, 564-65 (1971)); *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973) ("In determining that sufficiency [of the affidavit] we are concerned only with the statements of fact contained in the affidavit").

In addition to those facts discussed above which predicated Detective Gillilan's reasonable suspicion, the Affidavit sets forth one additional fact that provided the Judge with a substantial basis for concluding that probable cause existed. And that fact was the positive alert by Canine Cash to the odor of narcotics.

Courts may presume that a detection-dog's alert provides probable cause to search. *Florida v. Harris*, 568 U.S. 237, 247 (2013); *see also United States v. Johnson*, 25 F. Supp. 3d 1034, 1038 (W.D. Mich. 2014) (probable cause established at time of canine alert). This presumption is provided "[i]f a bona fide organization has certified the dog after testing his reliability in a controlled setting." *Harris*, 568 U.S. at 246-47. Defendants may rebut this presumption by challenging the certification program, a particular canine's history in the field, or the circumstances surrounding the alert. *Id.* at 247.

Here, Canine Cash is certified by the State of Ohio as a Special Purpose Canine. Defendant has not challenged this certification nor Cash's history in the field. Furthermore, Defendant does not challenge the circumstances surrounding Cash's alert in this investigation. Instead, and as discussed thoroughly above, Defendant focuses his challenge on Detective Gillilan's reasonable suspicion. And as the Court found above, Detective Gillilan had a

reasonable suspicion to detain the package and subject it to further investigation. Since the alert was positive and reflected in the Affidavit, the County Judge had a substantial basis for concluding that probable cause existed to search the package.

### III. CONCLUSION

While Detective Gillilan's Affidavit for Search Warrant was conclusory in certain respects, it still outlined particular and objective facts that supported his reasonable suspicion to detain the package at issue. And since his partner Cash gave a positive alert to the suspected package, the Stark County Common Pleas Judge had a substantial basis for concluding that probable cause existed to search the package.

Accordingly, the Court **DENIES** Defendant's Motion to Suppress. (Doc. 17).

**IT IS SO ORDERED.**

 s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: December 6, 2021**